Argued and submitted January 6, the decision of the Court of Appeals reversed; the order of the Workers' Compensation Board reversed and case remanded to the Workers' Compensation Board for further proceedings December 14, 2000

### In the Matter of the Compensation of
### George D. Koskela, Claimant.

### George D. KOSKELA,
*Petitioner on Review,*

*v.*

### WILLAMETTE INDUSTRIES, INC.,
*Respondent on Review.*

### (WCB 95-08576; CA A97325; SC S46351)

15 P3d 548

David W. Hittle, Burt, Swanson, Lathen, Alexander, and McCann, Salem, argued the cause and filed the brief for petitioner on review.

David L. Johnstone, VavRosky, MacColl, Olson, Bush & Pfeifer, P.C., Portland, argued the cause and filed the brief for respondent on review.

Julene M. Quinn, Salem, filed a brief on behalf of *amici curiae* SAIF Corporation and South Hills Health Care Center.

Phil Goldsmith, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association, Legal Aid Services of Oregon, Oregon Advocacy Center, Oregon Law Center, and Oregon AFL-CIO. With him on the brief was Lake James H. Perriguey.

LEESON, J.

## LEESON, J.

The underlying issue in this workers' compensation proceeding is whether claimant is permanently totally disabled.[1] The Workers' Compensation Board (Board) held that claimant is only permanently partially disabled. The Board rejected claimant's assertion that the post-1995 process for determining whether a worker should receive an award of permanent total disability (PTD) benefits facially is invalid under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] In a split, en banc decision, the Court of Appeals affirmed. *Koskela v. Willamette Industries, Inc.*, 159 Or App 229, 978 P2d 1018 (1999). We allowed claimant's petition for review, and, for the reasons that follow, we reverse the decision of the Court of Appeals and the order of the Board. We remand the case to the Board for further proceedings.

The facts relevant to claimant's challenge are not in dispute. Claimant began working for Willamette Industries in 1965. In 1986 and 1989, claimant suffered compensable injuries to his jaw while he was working as a scrubber. Claimant already had an extensive history of medical problems with his temporomandibular joint (TMJ). In June 1994, after multiple surgeries, claimant's treating physician declared claimant medically stationary,[3] but he noted that claimant continued to experience facial swelling and pain when engaged in physical activities.

The declaration that claimant was medically stationary triggered the claim closure process conducted by the

---

[1] An injured worker receives "permanent total disability" (PTD) benefits if the worker is permanently incapacitated "from regularly performing work at a gainful and suitable occupation." ORS 656.206(1)(a). PTD benefits consist of payments in the amount of 66-2/3 percent of the worker's wages, ORS 656.206(2), and are intended to compensate for the wages the worker loses permanently as a consequence of a compensable injury. *See Tee v. Albertsons, Inc.*, 314 Or 633, 640, 842 P2d 374 (1992) (so stating).

[2] The Fourteenth Amendment provides, in part, that no state shall "deprive any person of * * * property, without due process of law[.]"

[3] ORS 656.005(17) provides:

" 'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time."

Department of Consumer and Business Services (DCBS) for determining the extent of claimant's permanent disability. *See former* ORS 656.268(2)(a) (1993) *renumbered as* ORS 656.268(1)(a) (1999) (claim closure begins after claimant "has become medically stationary"). As part of the claim closure process, claimant underwent three medical examinations that his self-insured employer had ordered. ORS 656.325(1)(a). Employer's medical examiners conducted physical examinations of claimant and reviewed a "surveillance videotape" that employer had made, showing, among other things, claimant mowing his lawn, chopping wood, fishing, and driving his truck. The medical examiners concluded that claimant was capable of performing at least sedentary work. Claimant's physician also reviewed the videotape and agreed that claimant was capable of performing the physical activities depicted on it, but he questioned whether claimant could perform such activities on a regular basis. In October 1994, after reviewing the medical reports from employer's medical examiners and claimant's treating physician, DCBS issued a determination order that awarded claimant 14 percent permanent partial disability (PPD) benefits. *See* ORS 656.268(2) and (5) (1993) (describing DCBS review).

Claimant sought reconsideration, and the matter was assigned to the appellate review unit (ARU) of DCBS. ORS 656.268(5), (6)(a) (1993). When claimant sought reconsideration, ORS 656.283(7) (1993) provided, in part:

> "Nothing in this section shall be construed to prevent or limit the right of a worker, insurer or self-insured employer to present evidence at hearing and to establish by a preponderance of the evidence that the standards * * * for evaluation of the worker's permanent disability were incorrectly applied in the reconsideration order pursuant to ORS 656.268."

The Court of Appeals had construed that wording as permitting a party to introduce evidence at hearing that it had not introduced previously at reconsideration. *Safeway Stores, Inc. v. Smith*, 122 Or App 160, 163, 857 P2d 187 (1993).

In the reconsideration proceeding, claimant bore the burden of proving the extent of his disability. ORS 656.266. Claimant sought to prove that he was permanently totally

disabled. To prove that he should receive PTD benefits, claimant had to demonstrate: (1) "permanent total disability status," that is, that his disability permanently prevented him from regularly performing work at a gainful and suitable occupation, (2) that he was willing to seek regular gainful employment, and (3) that he had made reasonable efforts to obtain such employment. *See* ORS 656.206(3) (describing claimant's burden).

In July 1995, the ARU issued an order on reconsideration rejecting claimant's contention that he was permanently totally disabled, but increasing his permanent disability rating from 14 percent to 29 percent PPD. Claimant requested a hearing before an administrative law judge (ALJ). *Former* ORS 656.268(6)(b) (1993), *renumbered as* ORS 656.268(6)(g) (1999); ORS 656.283(1) (1993).

At outset of the hearing, on October 16, 1995, claimant stated that he planned to introduce testimonial evidence from himself, his family physician, a vocational expert, and lay witnesses who knew him. That testimony would regard the extent of his permanent disability, whether suitable sedentary employment was available, his willingness to work, and his efforts to find suitable work. However, on June 7, 1995, while claimant's case was pending before the ARU, a legislative amendment to ORS 656.283(7) took effect. *See* Or Laws 1995, ch 332, § 69 (providing for effective date of amendment to ORS 656.283(7)). That amendment modified the sentence in ORS 656.283(7), set out above, regarding the rights of the parties to introduce evidence at hearing. The amendment also added a sentence, which we discuss in more detail later in this opinion, that prohibits the introduction of new evidence at hearing and limits the issues that may be considered at hearing to those that have been raised at reconsideration. Relying on the new statutory restrictions, the ALJ refused to admit any additional evidence or testimony in support of claimant's contention that he should receive an award of PTD benefits.

In response to the ALJ's ruling, claimant argued that the 1995 amendments to the claim closure process violated the Due Process Clause of the Fourteenth Amendment, because they deprived him of an oral evidentiary hearing,

including the right to appear, to present live testimony, and to cross-examine adverse witnesses in meeting his burden of proof and persuasion regarding an award of PTD benefits. The ALJ rejected that argument. She then held that, based on the written record that had been compiled during the reconsideration process, claimant had failed to meet his burden of showing that he is permanently and totally disabled. That record contained no evidence about whether suitable sedentary work was available to claimant, no evidence that claimant had searched for work, and no showing that, were it not for his compensable TMJ condition, claimant would be willing to work. Accordingly, the ALJ affirmed the ARU's order on reconsideration that had awarded claimant 29 percent PPD benefits. As noted, the Board affirmed.

Before the Court of Appeals, claimant contended that the 1995 amendments to ORS chapter 656 violate the Due Process Clause, because they provide no opportunity for a worker who is seeking PTD benefits thoroughly to present evidence on all the elements on which the worker bears the burden of proof and persuasion, and they deny the worker the opportunity to rebut adverse evidence or to cross-examine adverse witnesses. The Court of Appeals' majority weighed claimant's private interest in PTD benefits; the risk of an erroneous deprivation of that interest through the procedures provided for determining the extent of permanent disability and the value, if any, of added or substitute procedural safeguards; and the government's interest, including the fiscal and administrative burdens of additional or substitute procedures. *Koskela*, 159 Or App at 235; *see Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976) (identifying three-factor test in due process challenges, hereafter *"Mathews* factors"). It then held that "due process principles do not entitle a claimant [seeking PTD benefits] to present evidence through in-hearing testimony rather than through written reports and sworn affidavits." *Koskela*, 159 Or App at 251.

Judge Edmonds concurred. He argued that, because ORS 656.283(7) authorizes the ALJ to "conduct the hearing in any manner that will achieve substantial justice[,]" claimant's facial due process challenge must fail, but that claimants still could bring an "as applied" challenge if an ALJ

denied a worker the opportunity for oral presentation of evidence when due process required such an opportunity. *Id.* at 251-52 (quoting ORS 656.283(7)).

Judges De Muniz and Wollheim dissented. They argued, among other things, that determining whether a worker should be awarded PTD benefits necessarily includes an assessment of the worker's credibility and veracity, which requires an ALJ to observe credibility and veracity first hand, and on the record. *Id.* at 255 (De Muniz, J., dissenting), and at 260 (Wollheim, J., dissenting).

We review for errors of law. ORS 656.298(7). However, before addressing claimant's due process challenge to ORS 656.283(7), we must consider a threshold issue that employer argues disposes of this matter. The Due Process Clause of the Fourteenth Amendment applies to state action that deprives a person of a protected property interest.[4] *Cleveland Bd. of Educ. v. Loudermill*, 470 US 532, 538, 105 S Ct 1487, 84 L Ed 2d 494 (1985). Property includes state-created benefits to which a person has become entitled. *Board of Regents v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). A person who has established an entitlement to a state-created benefit has a property interest in the continued receipt of that benefit. *See, e.g., Mathews*, 424 US at 332 (property interest in continued receipt of Social Security disability benefits); *Goldberg v. Kelly*, 397 US 254, 261-62, 90 S Ct 1011, 25 L Ed 2d 287 (1970) (property interest in continued receipt of welfare benefits). Before the Board and the Court of Appeals, employer did not challenge whether claimant had a protected property interest in disability benefits. However, after the case had been submitted to the Court of Appeals, the United States Supreme Court issued an opinion that, in employer's view, calls into question whether claimant has a protected property interest in disability benefits. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US 40, 119 S Ct 977, 143 L Ed 2d 130 (1999). The Court of Appeals

---

[4] The parties do not dispute that the Board's action in rejecting claimant's claim for PTD benefits was state action for purposes of a federal procedural due process challenge. *See Adickes v. S. H. Kress & Co.*, 398 US 144, 152 90 S Ct 1598, 26 L Ed 2d 142 (1970) ("The involvement of a state official * * * plainly provides the state action essential to show a direct violation of [the] Fourteenth Amendment[.]").

did not address that issue, because it determined that ORS 656.283(7) does not violate due process. *See Koskela,* 159 Or App at 234 n 3 ("Given our rejection of the due process challenge, we need not consider *Sullivan's* implications for this case.").

Before this court, employer asserts that *Sullivan* provides the proper basis for resolving this case, because *Sullivan* held that a workers' compensation claimant does not have a property interest in disability benefits. In employer's view, there is no due process constraint on the legislature of the kind that claimant asserts.

In *Sullivan,* the Court held that, under Pennsylvania's workers' compensation act, claimants do not have a property interest in payments for medical treatments for which they are *eligible* but to which they are not yet *entitled. Sullivan,* 526 US at 61.[5] The Court explained that, under Pennsylvania law, workers' compensation claimants seeking payment for medical treatments must "clear two hurdles." *Id.* at 60-61. First, claimants "must prove that an employer is liable for a work-related injury[.]" *Id.* at 61. Second, claimants "must establish that the particular medical treatment at issue is reasonable and necessary." *Id.* The Court concluded that the claimants in that case had cleared the first hurdle but not the second one: "While they indeed have established their initial *eligibility* for medical treatment, they have yet to make good on their claim that the particular medical treatment that they received was reasonable and necessary." *Id.* (emphasis in original). Accordingly, the Court held, the claimants had not established a property interest in payments for medical treatments that had "yet to be found reasonable and necessary." *Id.*

According to employer, workers' compensation claimants in Oregon do not have a protected property interest in permanent disability benefits until they establish through the claim closure process that they are entitled to

---

[5] The Pennsylvania act provides that: " 'All payments to providers for treatment * * * shall be made within thirty (30) days of receipt of such bills and records *unless the employer or insurer disputes the reasonableness or necessity of the treatment*[.]' " *Sullivan,* 526 US at 60 (quoting 77 Pa Stat Ann § 531(5) (Purdon Supp 1998)) (emphasis in original).

receive such benefits. Underlying employer's argument is the assumption that workers have no property interest in benefits until they meet their burden of demonstrating the extent of their permanent disability. *See* ORS 656.266 (setting out burden). That assumption misapprehends the nature of a worker's property interest and the purpose of the claim closure process.

■■ In Oregon, apparently unlike in Pennsylvania, a claimant needs to clear only one hurdle to establish entitlement to compensation benefits. Acceptance of a claim signifies that the worker has met the burden of proving a compensable injury. ORS 656.266; *see* ORS 656.262(2) ("The compensation due under this chapter *shall* be paid * * * to the person entitled thereto * * * except where the right to compensation is denied" (emphasis added)). The claim closure process begins after a claim has been accepted and a claimant has been declared medically stationary. ORS 656.268(1)(a). The purpose of claim closure is to "determine the *extent* of the worker's permanent disability," ORS 656.268(1) (emphasis added), not, as employer would have it, the worker's *entitlement* to compensation. Because a claimant whose claim has been accepted is entitled to receive workers' compensation benefits, that claimant has a protected property interest in receiving compensation. *See Roth*, 408 US at 577 ("To have a property interest in a benefit, a person clearly must have * * * a legitimate claim of entitlement to it."). *Sullivan* is not a barrier to reaching claimant's constitutional challenge in this case.

To assess claimant's constitutional challenge, it first is necessary to describe in detail the post-1995 statutory process for determining the extent of a worker's permanent disability. The first step is claim closure. Under ORS 656.268, claim closure is authorized when the worker's condition becomes "medically stationary," as occurred in this case, or when certain other events occur. ORS 656.268(1), (2)(a), (4)(a). DCBS, the insurer, or the self-insured employer is responsible for claim closure. ORS 656.268(1) (1995).[6]

---

[6] In 1999, the legislature amended ORS 656.268(1) to require the Director of DCBS to "phase out the claim closure activities of [DCBS]" by "not later than June 30, 2001." Or Laws 1999, ch 313, § 16. After that date, insurers or self-insured employers will have sole responsibility for claim closure.

An insurer or self-insured employer that closes the claim must make findings regarding the extent of the worker's permanent disability by applying standards that are prescribed by DCBS. ORS 656.268(4)(b) (1995) *renumbered as* ORS 656.268(5)(a)) (1999). Those findings are made solely based on medical and vocational reports. The insurer or self-insured employer then must issue a notice to the worker, to the worker's attorney if the worker is represented, and to DCBS stating whether the worker should receive an award of PTD benefits or, if the worker is not determined to be permanently totally disabled, the percentage of permanent partial disability benefits the worker should receive. *Id.* If an insurer or self-insured employer does not elect to close the claim, then DCBS must determine the extent of the worker's permanent disability and issue a determination order. ORS 656.268(5)(a) (1995).

A notice of closure or a determination order must inform the parties of their right to seek reconsideration of the finding regarding the extent of an injured worker's permanent disability and the amount of the disability award. ORS 656.270; *see also* ORS 656.268(4)(b) (1995) *renumbered as* ORS 656.268(5)(a) (A) (1999) (requiring notice of closure to inform workers of right to seek reconsideration within 60 days of the notice of closure). The notice or order also must notify the injured worker of the right to consult with the ombudsman for injured workers[7] and to be represented by an attorney at reconsideration. ORS 656.270.

If a party is dissatisfied with a notice of closure or a determination order, then that party may request reconsideration. ORS 656.268(5)(b) (1995) *renumbered as* ORS 656.268(5)(c) (1999). The reconsideration process may occur only once on each notice of closure or determination order.

---

[7] ORS 656.709(1) provides:

"The office of ombudsman for injured workers is created in the Department of Consumer and Business Services. The ombudsman shall report directly to the Director of the Department of Consumer and Business Services. The ombudsman shall act as an advocate for injured workers by accepting complaints concerning matters related to workers' compensation, investigating them and attempting to resolve them. The ombudsman shall also provide information to injured workers to enable them to protect their rights in the workers' compensation system."

ORS 656.268(6)(a). A request for reconsideration must include, among other things, a statement "[w]hether there is disagreement with the specific impairment findings used to determine permanent disability at the time of claim closure and if so, an explanation * * * of the specific areas of disagreement[.]" OAR 436-030-0125(6).[8] The reconsideration process begins when DCBS receives the request for reconsideration. OAR 436-030-0115(2). At reconsideration, the worker has the burden of proof. ORS 656.206(3); ORS 656.266.

Like claim closure, reconsideration is conducted entirely on a written record.[9] Either party, in writing, may correct erroneous information in the record and submit medical evidence that should have been but was not submitted by the claimant's attending physician at the time of claim closure. ORS 656.268(6)(a). The parties also may submit written responses to the other side's documentary evidence, as well as written arguments, statements, and sworn affidavits. OAR 436-030-0115(4).

A party that is dissatisfied with an order on reconsideration may request a hearing under ORS 656.283. ORS 656.268(6)(f) (1995) *renumbered as* ORS 656.268(6)(g) (1999);

---

[8] If a worker who is not represented by an attorney files a request for reconsideration, then

"the department shall assist the worker in developing a completed request; inform the worker of the right to consult with the ombudsman or an attorney; and mail a copy to the insurer. Notwithstanding any other provision of this rule, the department may extend any nonstatutory time frames or request any information deemed necessary to assure the unrepresented worker's reconsideration request is complete."

OAR 436-030-0135(2).

[9] OAR 436-030-0115(3) provides, in part:

"For the purpose of these rules, 'reconsideration proceeding' means the procedure established to reconsider a Notice of Closure or Determination Order and *does not include personal appearances by any of the parties to the claim or their representatives, unless requested by the department.* All information to correct or clarify the record and any medical evidence regarding the worker's condition as of the time of claim closure that should have been but was not submitted by the physician serving as the attending physician at the time of claim closure and all supporting documentation must be presented during the reconsideration proceeding."

(Emphasis added.)

ORS 656.283(1). The Board refers hearings to an ALJ. ORS 656.283(4).

The 1995 amendments to ORS 656.268 and ORS 656.283(7) changed the evidence that an ALJ may consider at a hearing on an order on reconsideration and how the ALJ shall conduct those hearings.[10] ORS 656.268(7)(g) (1995) *renumbered as* ORS 656.268(7)(h) (1999), now provides that, after reconsideration, "*no* subsequent medical evidence of the worker's impairment is admissible * * * for purposes of making findings of impairment on the claim closure." (Emphasis added.) The ALJ may consider at hearing only issues that a party raised and preserved at reconsideration, or that arise out of the reconsideration order itself. ORS 656.268(8). As amended, ORS 656.283(7) provides, in part:

> "*Except as otherwise provided in this section* and rules of procedure established by the board, the Administrative Law Judge is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice. Neither the board nor an Administrative Law Judge may prevent a party from withholding impeachment evidence until the opposing party's case in chief has been presented, at which time the impeachment evidence may be used. * * * Evaluation of the worker's disability by the Administrative Law Judge shall be as of the date of issuance of the reconsideration order pursuant to ORS 656.268. Any finding of fact regarding the worker's impairment must be established by medical evidence that is supported by objective findings. The Administrative Law Judge shall apply to the hearing of the claim such standards for evaluation of disability as may be adopted by the director pursuant to ORS 656.726. *Evidence on an issue regarding a notice of closure that was not submitted at the reconsideration required by ORS 656.268 is not admissible*

---

[10] Before the 1995 amendments, claimants could request an oral evidentiary hearing before an ALJ following reconsideration. In 1993, this court characterized the hearing before an ALJ as a contested-case hearing similar to the kind of evidentiary hearing provided by the Administrative Procedures Act (APA). *See Colclasure v. Wash. County School Dist. No. 48-J*, 317 Or 526, 533, 857 P2d 126 (1993) ("There can be no doubt that the proceeding before the [ALJ] is a classic contested case."). As noted, in 1993, the Court of Appeals had construed ORS 656.283(7) (1993) as permitting a claimant to introduce new evidence at hearing that had not been introduced at reconsideration. *Safeway Stores*, 122 Or App at 163.

*at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself. However, nothing in this section shall be construed to prevent or limit the right of a worker, insurer or self-insured employer to present the reconsideration record at hearing to establish by a preponderance of that evidence that the standards adopted pursuant to ORS 656.726 for evaluation of the worker's permanent disability were incorrectly applied in the reconsideration order pursuant to ORS 656.268. \* \* \*."*

(Emphasis added.)

Before the 1995 amendments, ORS 656.283(7) had permitted the ALJ to conduct a hearing "in any manner that will achieve substantial justice." The 1995 amendments limited the ALJ's authority regarding the conduct of hearings on orders on reconsideration by adding the phrase, "[e]xcept as otherwise provided in this section \* \* \*." With respect to hearings on orders on reconsideration, other amendments to ORS 656.283(7), emphasized above, specifically limit the evidence that is admissible to what was presented in writing at reconsideration or that arises out of the reconsideration order.

In other words, the post-1995 statutory scheme specifically restricts an ALJ's authority regarding the conduct of hearings on orders on reconsideration regarding the extent of a worker's permanent disability. The 1995 amendments to ORS 656.268(7)(h), ORS 656.268(8), and ORS 656.283(7) make clear that a worker must submit *all* evidence of the extent of disability in writing at reconsideration.[11]

The Court of Appeals' majority held that a written record is adequate under due process standards for determining whether a worker should receive an award of PTD benefits. Nonetheless, it asserted that, as it previously had held in *Rogue Valley Medical Center v. McClearen*, 152 Or App 239, 952 P2d 1048 (1998), the statutory scheme affords parties a limited right to cross-examine medical and vocational experts at hearing. *Koskela*, 159 Or App at 238.

---

[11] A medical arbiter's report is admissible at hearing "even if the report is not prepared in time for use in the reconsideration proceeding." ORS 656.268(6)(e) (1995), *renumbered as* ORS 656.268(6)(f) (1999).

In *McClearen*, the Court of Appeals had held that, in cases involving issues of loss of earning capacity, vocational evidence may be admitted at hearing under ORS 656.287(1), so long as the insurer or self-insured employer had submitted the reports to the worker ten days before hearing and made the writer of the report available for testimony and cross-examination at hearing. *McClearen*, 152 Or App at 245. In *Koskela*, the majority cited OAR 438-007-0005(3) for the proposition that the contents of medical, surgical, and hospital reports are admissible at hearing if the doctor rendering the medical and surgical reports submits to cross-examination. 159 Or App at 238. OAR 438-007-0005(3), in turn, implements ORS 656.310(2), which provides, in part:

> "The contents of medical, surgical and hospital reports presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein; so, also, shall such reports presented by the insurer or self-insured employer, provided that the doctor rendering medical and surgical reports consents to submit to cross-examination."

The 1995 amendments to ORS 656.268 and ORS 656.283(7) focus on claim closure and reconsideration, which are the processes for determining the extent of an injured worker's permanent disability. Those amendments explicitly limit the evidence that can be admitted at a hearing on an order on reconsideration to the written reconsideration record. Allowing oral testimony and cross-examination at hearing would introduce new evidence. *See, e.g., State v. Stevens*, 328 Or 116, 133, 970 P2d 215 (1998) (cross-examination introduces new evidence). To the extent that ORS 656.287(1) and ORS 656.310(2) would permit the introduction of evidence at a hearing on the extent of an injured worker's permanent disability, and permit even limited cross-examination, they are inconsistent with the specific evidentiary limitations imposed by the 1995 amendments to ORS 656.268 and ORS 656.283(7). When statutes are inconsistent, the legislature has prescribed that the particular provision "is paramount" to the general provision. ORS 174.020; *see also Smith v. Multnomah County Board of Commissioners*, 318 Or 302, 309, 865 P2d 356 (1994) (in conflict

between statutes, special provisions must prevail over general provisions). Although the provisions of ORS 656.287(1) and ORS 656.310(2) remain applicable in *other* kinds of hearings provided for in chapter 656, they no longer apply to hearings on orders on reconsideration. As we have explained, the post-1995 statutory scheme for determining the extent of an injured worker's permanent disability does not permit the introduction of evidence through oral testimony or cross-examination at hearing. Rather, the process consists entirely of written submissions, from which the decision-maker determines whether the worker has met the burden of proof and persuasion with respect to PTD benefits.

To summarize: Under the 1995 amendments to ORS 656.268 and ORS 656.283(7), a worker, insurer, or self-insured employer who is dissatisfied with a notice of closure or determination order may request reconsideration by the ARU of DCBS. The worker has the burden of proof and persuasion. If the worker is seeking PTD benefits at reconsideration, then the worker must prove that he or she permanently is prevented from regularly performing work at a gainful and suitable occupation, is willing to seek regular gainful employment, and has made reasonable efforts to seek such employment. Like the process that led to the notice of closure or the determination order, the reconsideration record consists solely of written submissions. The parties may submit written evidence and affidavits, and the worker may rebut in writing evidence that the insurer, self-insured employer, or DCBS relied on in issuing the notice of closure or determination order.

A party that is dissatisfied with an order on reconsideration may request a hearing. The parties are not permitted to introduce any other new evidence, such as presenting oral testimony, cross-examining adverse witnesses, or presenting rebuttal evidence. In short, under the 1995 amendments to ORS 656.268 and ORS 656.283(7), the record on which a decision is made regarding an award of PTD benefits—or any permanent disability benefits—consists solely of the parties' written submissions.

With that understanding of the post-1995 statutory scheme, we turn to the merits of claimant's constitutional

challenge. *See Loudermill*, 470 US at 541 ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'") (quoting *Morrissey v. Brewer*, 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484 (1972)).

■■■■ As a matter of procedural due process, it is well established that the state may not deprive a person of life, liberty, or property without "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Tr. Co.*, 339 US 306, 313, 70 S Ct 652, 94 L Ed 865 (1950). An appropriate hearing is one that is provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965); *see State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990) (so stating). The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard. *Goldberg*, 397 US at 269. When important decisions turn on assessments of credibility and veracity, written submissions are "wholly unsatisfactory." *Id.* The purpose of due process requirements is to provide a "safeguard against mistake." *Mathews*, 424 US at 345.

In this case, claimant does not object to the notice or to the timing requirements contained in the post-1995 procedures for establishing the extent of a worker's permanent disability. He argues only that the evidentiary restrictions imposed by the process constitutionally are inadequate, because they prevent a worker seeking PTD benefits, who bears the burden of proof and persuasion, from participating meaningfully in the process. Whether a process is meaningful under the Due Process Clause turns on the three *Mathews* factors. *Mathews*, 424 US at 335. We address each factor in turn, beginning with the private interest that will be affected by a determination that a worker should not receive PTD benefits. *See id.* (private interest first factor in test).

■■ ■■ Without wage-replacement benefits, a permanently totally disabled worker risks losing his or her economic self-sufficiency. The United States Supreme Court has recognized that the loss of a person's livelihood is a severe deprivation. Continued employment is such an important interest that it "ought not be interrupted without substantial justification." *Federal Deposit Ins. Corp. v. Mallen*, 486 US 230,

243, 108 S Ct 1780, 100 L Ed 2d 265 (1988); *see also Louder-mill*, 470 US at 543 ("We have frequently recognized the severity of depriving a person of the means of livelihood"; citing cases).

 The purpose of PTD benefits is to provide permanently totally disabled workers with the equivalent of continued employment in the form of lifetime wage replacement, thereby restoring them to economic self-sufficiency. ORS 656.012(2)(c); *see Tee v. Albertsons, Inc.*, 314 Or 633, 640, 842 P2d 374 (1992) (award of permanent disability benefits "aims to compensate an injured worker for *permanently* lost earning capacity, thereby promoting the goal of returning the worker to economic self-sufficiency" (emphasis added)). The importance of economic self-sufficiency, both for permanently totally disabled workers and their dependents, is self-evident. *See* ORS 656.012(2)(a) (Workers' Compensation Law to provide adequate and reasonable income benefits to injured workers and dependents).

 The possible length of a wrongful deprivation of benefits also is an important factor in assessing the private interest at stake. *Fusari v. Steinberg*, 419 US 379, 389, 95 S Ct 533, 42 L Ed 2d 521 (1975). If the deprivation of benefits is merely temporary, for example, and prompt and adequate procedures exist to correct errors in the eligibility determination, then the private interest is not as great as it is if the determination is final. *Id.*

Under the Oregon workers' compensation statutes, the determination that a worker is *not* eligible for PTD benefits is final. Considering both the importance of economic self-sufficiency and the finality of an adverse determination, we hold that a permanently totally injured worker's interest in receiving PTD benefits is great.[12]

---

[12] Even if a worker is awarded PTD benefits, that award is subject to review every two years, and the award may be reduced to PPD if the claimant subsequently is found to be capable of working. ORS 656.206(5). In employer's view, the fact that an award of PTD benefits is not final, because of the two-year review provision, means that a worker's private interest is not as great as the state's interest. That argument misses the point that, under the workers' compensation scheme, a permanently injured worker is entitled to disability benefits that are intended to maintain his or her economic self-sufficiency.

■ We turn to the second *Mathews* factor, which is whether the process adequately safeguards a worker's private interest in PTD benefits from an erroneous deprivation and the probable value, if any, of added or substitute procedural safeguards. *See Mathews*, 424 US at 335 (describing second factor). As we have explained, ORS 656.206(3) requires a worker seeking PTD benefits to prove that he or she permanently is incapacitated from regularly performing work at a gainful and suitable occupation, is willing to seek regular gainful employment, and has made reasonable efforts to gain such employment. The decision-maker determines whether a worker has satisfied the burden of proof and persuasion after evaluating the parties' competing evidence. The post-1995 statutory scheme limits the worker to a written record at every stage of the process in meeting the burden of proof and persuasion.

In *Goldberg*, the Supreme Court explained that written submissions are an "unrealistic option" for individuals who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. 397 US at 269. For purposes of this analysis, however, we assume without deciding that all PTD claimants are able to retain counsel and that a written record would suffice for determining whether a worker permanently is incapacitated from regularly performing work at a gainful and suitable occupation.

■ However, that is not the only issue in a proceeding of this kind. A worker seeking PTD benefits also must prove that he or she is willing to work and has made reasonable efforts to find suitable employment. The worker's credibility directly is at issue with respect to willingness to work and reasonable efforts to find suitable employment. In situations requiring the decision-maker to apply a broad standard that includes subjective assessments of, among other things, a person's credibility and veracity, due process requires "personal contact between the recipient and the person who decides his case." *Califano v. Yamasaki*, 442 US 682, 697, 99 S Ct 2545, 61 L Ed 2d 176 (1979). What is more, when, as here, the decision-maker must resolve factual disputes involving credibility and veracity, due process requires an opportunity for at least some kind of an oral evidentiary hearing. *Goldberg*, 397 US at 268.

As we have explained, the post-1995 statutory scheme for determining whether a worker should receive an award of PTD benefits provides no opportunity for a worker to have an oral evidentiary hearing. Because two of the three elements that the worker seeking PTD benefits must prove require a judgment about the worker's credibility and veracity, and the resolution of factual disputes, the probable value of at least some opportunity for the presentation of evidence at an oral hearing is substantial. *See Mathews*, 424 US at 335 (requiring inquiry into value of additional or substitute procedural safeguards).

 ██ The final *Mathews* factor is the state's interest and the cost of added procedural safeguards. 424 US at 335. The 1995 amendments reflect the state's interest in the development of a complete record at an early stage of the process, and preventing the introduction of additional evidence after reconsideration. There is no doubt that restricting the record at hearing to the record that was developed at reconsideration makes the process more efficient. However, efficiency is not an end in itself. The Supreme Court has explained that

> "the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the * * * Due Process Clause in particular, that [it was] designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones."

*Stanley v. Illinois*, 405 US 645, 656, 92 S Ct 1208, 31 L Ed 2d 551 (1972) (footnote omitted). The Oregon Legislature also has recognized that the state has an interest in the fair and accurate resolution of workers' compensation disputes, because the purpose of the workers' compensation statutes is to ensure that insurers and self-insured employers, rather than taxpayers, will carry the burden of returning permanently injured workers to an economically self-sufficient status. *See* ORS 656.012(2)(a), (b), (c) (objectives of Workers' Compensation Law are to provide workers and dependents adequate and reasonable income benefits, access to fair and just administrative system for delivery of financial benefits, and to restore workers to economically self-sufficient status).

Efficiency does not trump the basic constitutional right to a minimally adequate hearing.

Allowing a worker who is seeking PTD benefits an opportunity at some stage of the process to have some kind of an oral evidentiary hearing will not impede significantly the state's ability to resolve those disputes efficiently. Administrative law judges are expert, neutral decision-makers who can control the extent and length of testimony and can work with the parties to limit the record to written submissions when doing so is appropriate. The additional cost of providing PTD claimants with the opportunity for at least some kind of oral evidentiary hearing is minimal given the magnitude of the private interest that is at stake.

Having considered the three *Mathews* factors, we conclude that the post-1995 statutory scheme for assessing whether a worker should receive an award of PTD benefits fails to satisfy procedural due process requirements. A worker's private interest in PTD benefits, which are intended to restore permanently injured workers to economic self-sufficiency through lifetime wage-replacement benefits, is great. The worker seeking PTD benefits has the burden of proof and persuasion. The determination that a worker should receive an award of PTD benefits is final. That determination requires the decision-maker to resolve factual disputes and to make judgments about the credibility and veracity of a worker's claim that he or she is willing to work and has made reasonable efforts to find suitable gainful employment. Under the statute, the worker must meet the burden of proof and persuasion based entirely on a written record. At no stage of the process is the worker afforded any opportunity to have an oral evidentiary hearing. Because the worker does not have the opportunity to make a meaningful record on elements of proof that are necessary for the worker to meet the burden of proof and persuasion, we hold that the post-1995 statutory process does not provide adequate safeguards against mistake. *Mathews*, 424 US at 345. Allowing a worker, at some meaningful stage of the process, an opportunity for at least some kind of oral evidentiary hearing will not significantly impede the state's interest in providing a cost-effective process, because hearings can be conducted in a manner that achieve both fairness and efficiency.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.