Argued and submitted April 8, 2014, affirmed April 1, 2015

In the Matter of the Compensation of
Penny I. Cooper, Claimant.

JELD WEN, INC.,
Jeld Wen Risk Management,
*Petitioner,*

*v.*

Penny I. COOPER,
*Respondent.*

Workers' Compensation Board
1101305; A151110

346 P3d 1275

Scott H. Terrall argued the cause and filed the briefs for petitioner.

Edward J. Harri argued the cause for respondent. With him on the brief was Philip H. Garrow.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

Employer seeks review of an order of the Workers' Compensation Board that affirmed an award of permanent partial disability benefits to claimant. Employer accepted claimant's claim for a left-ankle strain after she was injured in an accident at work in 2008. In 2010, employer closed the claim without an award of permanent disability. Claimant sought reconsideration by the Appellate Review Unit of the Workers' Compensation Division (ARU). While the reconsideration proceeding was pending, employer issued a denial of the compensability of claimant's "current left ankle condition," asserting that her current condition and any claimed need for treatment or disability associated with it was not related to the 2008 work injury. Thereafter, in the reconsideration proceeding, the ARU issued an order in which it modified employer's notice of closure to include an award of permanent partial disability based on impairment findings made by a medical arbiter appointed as part of the reconsideration process. The board affirmed that award. Employer seeks judicial review, asserting that the medical arbiter improperly expressed an opinion on the compensability of claimant's then-current condition. We affirm.

The following facts are not in dispute. Claimant injured her left ankle on the job in June 2008. Employer accepted her claim for a left-ankle strain. After receiving treatment from a number of doctors, claimant had reconstructive surgery on her ankle in April 2009. She continued to have problems with the ankle, reporting substantial pain and difficulty remaining on her feet for extended periods.

Claimant was examined by an insurance examiner, Dr. Yodlowski, in April 2010. Yodlowski opined that claimant had been medically stationary since August 21, 2008. She stated that no objective findings explained claimant's complaints. However, Yodlowski's examination revealed "mildly limited range of motion at the left foot and ankle when compared to the right."

In June 2010, claimant's attending physician, Dr. Stewart, reviewed Yodlowski's report. He agreed that claimant was likely medically stationary and that her

complaints could not be explained by objective findings: "Her complaints are purely subjective. There is no objective evidence or objective findings to indicate any permanent impairment associated with her left ankle condition. Relative to her left ankle, she is released to return to her regular work without restrictions. The claim may be closed with no permanent impairment."

Employer issued a notice that it was closing the claim with no award of permanent partial disability. Claimant requested reconsideration by the ARU, which issued an order rescinding the notice of closure. The order stated that employer had "failed to obtain sufficient information to determine the extent of disability," noting that Yodlowski's report had stated that claimant had decreased range of motion in her left ankle and that neither Yodlowski nor Stewart had stated that the decrease was not attributable to the accepted condition.

In response to the order, employer obtained from Stewart a statement that "claimant continues to be medically stationary relative to this industrial injury claim. She has ongoing subjective complaints that are unsubstantiated by any objective findings and are of unknown etiology. Any limitations relating to claimant's left ankle are based solely on her subjective complaints rather than any objective findings." Stewart stated that he had reviewed Yodlowski's report again and opined that the report did not document "any functionally significant loss in range of motion." He reiterated his view that "claimant has no significant loss of range of motion in her left ankle relating to this industrial injury."

Employer issued a new notice of closure awarding no permanent disability.

The next day, claimant went to a hospital emergency department complaining of pain and swelling in the middle toes of her left foot after she accidentally kicked the leg of her bed. Her toes were taped together to stabilize them, and she was prescribed pain medication and discharged.

Claimant again requested reconsideration of the notice of closure, objecting to the impairment findings used

to determine and rate permanent disability. She also asked to be examined by a medical arbiter.

Two weeks later, on December 23, 2010, employer sent claimant a letter denying that her current ankle condition was compensable:

> "Your claim has previously been accepted for a left ankle sprain. Evidence establishes that your current left ankle condition, and any claimed need for treatment and disability associated with your left ankle and foot, is not compensably related to your accepted industrial injury of June 30, 2008. We are therefore denying the compensability of your current left ankle condition. We will continue to process your claim for any benefits that may be found to be compensably related to the accepted injury."

A medical arbiter, Dr. Ballard, examined claimant in January 2011. Ballard found that the range of motion in claimant's left ankle was significantly more limited than Yodlowski had reported. He opined that the decreased range of motion was "due to the accepted condition of a left ankle sprain with subsequent reconstruction." A few days later, Ballard issued an addendum to his report, stating that, when he had examined claimant and written the initial report, he had not known that claimant had been to the emergency department after kicking the leg of her bed the previous October. However, he stated that he had since reviewed the pertinent records and that they did not change his opinion.

The director issued another order on reconsideration. The order stated, "In accordance with OAR 436-035-0007(5), Dr. Ballard's report, and addendum, are used to determine impairment as it is thorough and persuasive. There is not a preponderance of medical opinion which establishes a different level of impairment." The director concluded that claim closure was appropriate but found that claimant was entitled to an award of permanent partial disability.

Employer requested a hearing. After the hearing, an administrative law judge (ALJ) approved the order on reconsideration and awarded claimant $3,500 in attorney fees. Employer requested board review of the ALJ's order.

The board adopted the ALJ's findings and affirmed the permanent-disability and attorney-fee awards.[1]

In its first assignment of error on judicial review, employer asserts that the board erred as a matter of law in affirming the permanent-disability award. Employer contends that the Workers' Compensation Law contemplates that objections to a notice of closure are evaluated in separate proceedings from questions of compensability. Employer notes that the board has jurisdiction over compensability issues, while the director of the Workers' Compensation Division has jurisdiction over objections to a notice of closure. In employer's view, by affirming the reconsideration order, the board improperly allowed Ballard, the medical arbiter, to effectively rule on the compensability of claimant's current condition. Claimant responds that the board properly affirmed the permanent-disability award. We agree with claimant.

Employer is correct in asserting that the board, not the director, has jurisdiction over issues of compensability. *See* ORS 656.283(1), (2) (a request for a hearing "on any matter concerning a claim" is to be directed to the board); ORS 656.704(3)(a) (for purposes of determining the respective authority of the director and the board, "matters concerning a claim" include "those matters in which a worker's right to receive compensation, or the amount thereof, are directly in issue"). However, employer mischaracterizes what the medical arbiter did. As we explain below, the medical arbiter did not, as employer insists, rule on compensability.

As pertinent here, the term "compensability" relates to the compensability of a work-related injury. More precisely, as defined in ORS 656.005(7)(a), a "compensable injury" is "an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident *** if it is established by medical evidence supported by objective findings," subject to certain

---

[1] In addition to permanent partial disability, the order on reconsideration awarded claimant temporary disability benefits, which the ALJ affirmed. The board modified the amount of that award. Neither party challenges that aspect of the board's order on judicial review.

limitations not relevant here. In this case, the compensability of claimant's 2008 injury was established by employer's acceptance of claimant's claim for a left-ankle strain related to that injury. *See Koskela v. Willamette Industries, Inc.*, 331 Or 362, 371, 15 P3d 548 (2000) ("Acceptance of a claim signifies that the worker has met the burden of proving a compensable injury."); *see also* ORS 656.262(2) ("The compensation due under this chapter shall be paid * * * to the person entitled thereto * * *, except where the right to compensation is denied by the insurer or self-insured employer.").

At no point has employer attempted to deny claimant's claim for the 2008 ankle injury or otherwise belatedly establish that the injury was not compensable.[2] Its decisions to close the claim without awarding permanent disability were not retroactive determinations that the *injury* was not compensable; rather, they were decisions related to whether claimant had suffered impairment because of that injury— decisions that claimant could, and did, challenge through the reconsideration process. And, when the medical arbiter examined claimant in January 2011 in association with claimant's request for reconsideration, he specifically related his findings regarding decreased range of motion to the "accepted condition of a left ankle sprain with subsequent

---

[2] Generally, once an employer has accepted a claim, it may not later contest the compensability of that claim. ORS 656.262(6)(a) provides, in part:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim. Once the claim is accepted, the insurer or self-insured employer shall not revoke acceptance except as provided in this section."

ORS 656.262 goes on to enumerate three circumstances in which an employer may issue a denial after it has accepted a claim. First, subsection (6)(a) provides that an employer "may revoke acceptance and issue a denial at any time when the denial is for fraud, misrepresentation or other illegal activity by the worker." Second, in cases not involving fraud and the like, if the employer "later obtains evidence that the claim is not compensable or evidence that the insurer or self-insured employer is not responsible for the claim, the insurer or self-insured employer may revoke the claim acceptance and issue a formal notice of claim denial," but only if the denial is issued "no later than two years after the date of the initial acceptance." *Id.* Third, subsection (6)(c) provides that "acceptance of a combined or consequential condition * * * shall not preclude the insurer or self-insured employer from later denying the combined or consequential condition if the otherwise compensable injury ceases to be the major contributing cause of the combined or consequential condition." None of those circumstances is present in this case.

reconstruction," that is, to the accepted condition that arose from the compensable ankle injury. In other words, the medical arbiter permissibly determined whether claimant was impaired as a result of that 2008 injury, as contemplated by statute. *See* ORS 656.214(1)(a) ("'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury * * *."); ORS 656.268(8)(e)(A) ("The medical arbiter or panel of medical arbiters may examine the worker and perform such tests as may be reasonable and necessary to establish the worker's impairment."). He did not, as employer contends, "effectively express[] an opinion on the compensability" of claimant's then-current ankle condition.

In arguing to the contrary, employer focuses on the December 2010 letter in which it informed claimant that it was "denying the compensability of [her] current left ankle condition." Employer contends that, once it issued that denial, the medical arbiter lost authority to consider claimant's "current condition" in determining the extent to which claimant was disabled as a result of the compensable 2008 injury.

We reject employer's argument, which apparently seeks to split claimant's condition into two distinct conditions—one caused by her work-related injury and a different one caused by something not work-related. Employer purports to deny only the latter condition—the "current condition"—while maintaining its acceptance of the original claim for a left-ankle condition caused by the 2008 injury. Essentially, by interposing a "current condition denial" that was not prompted by any new claim filed by claimant, employer attempted to derail the ongoing reconsideration process by which claimant challenged employer's decision to close her 2008 claim without a permanent-disability award. Employer has not identified any statutory mechanism by which it could do that, and our research has not revealed any. It follows that employer's initial acceptance of claimant's left-ankle condition remains effective and that the compensability of the 2008 injury was not at issue during the reconsideration process. Thus, the medical arbiter did not impermissibly express an opinion on compensability, but merely determined the extent of claimant's impairment

resulting from the 2008 compensable injury. The board did not err as employer asserts.

Employer makes two other assignments of error, in which it argues that the board's order is not supported by substantial evidence and challenges the ALJ's attorney-fee award to claimant. We reject those assignments of error without discussion.

Affirmed.