Argued and submitted October 27, 1999, reversed and remanded for reconsideration October 3, 2001

In the Matter of the Compensation of
Linda K. Fister, Claimant.

SAIF CORPORATION
and South Hills Health Care Center,
*Petitioners,*

*v.*

Linda K. FISTER,
*Respondent.*

95-05569; A103418

33 P3d 320

David L. Runner argued the cause and filed the brief for petitioners.

Max Rae argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.*

---

* Schuman, J., *vice* Armstrong, J.

EDMONDS, P. J.

Schuman, J., concurring.

## EDMONDS, P. J.

This case presents a dispute about how to calculate one of the variables used to measure the capacity a worker loses as the result of a compensable injury. We conclude that we are unable on this record to determine whether the Workers' Compensation Board made the proper calculation. We reverse the Board's order and remand for reconsideration.

The amount of compensation that an injured worker receives for a permanent injury depends on the extent of the disability (called "permanent partial disability," or PPD) caused by the injury. ORS 656.214(5). The extent of disability, expressed as a percentage (*e.g.*, "14 percent PPD"), depends in turn on the seriousness of the injury "as modified by factors of age, education and adaptability to perform a given job." ORS 656.726(4)(f)(A). The Department of Consumer and Business Services provides formulas for expressing these modifying factors as numbers. A high number adds to the extent of disability, which, in turn, adds to the injured worker's compensation.

The modifying factor at issue in this case is "adaptability." Adaptability, under the Department's rules, is determined by comparing the worker's ability to perform work before and after the injury or, in the language of the rules, by comparing the worker's "base functional capacity" (BFC) with his or her "residual functional capacity" (RFC). *Former* OAR 436-35-310(2) (1994).[1] These statutes and rules reflect the proposition that a worker whose injury causes a significant loss of working capacity deserves more compensation than a worker whose injury inflicts minimal harm to working capacity, even if both workers end up identically disabled.

In this case, claimant worked as a certified nursing assistant for employer South Hills Health Care Center. While at work on May 11, 1993, she was injured when she fell. Her employer's insurer, SAIF, accepted her workers' compensation claim and paid for chiropractic treatment. A year after her injury, claimant became medically stationary.

---

[1] *Former* OAR 436-35-300 (1994) and *former* OAR 436-35-310 (1994) have been renumbered as OAR 436-035-0300 (1996) and OAR 436-035-0310 (1996). All future references to those rules are to the former rules.

Her claim was subsequently closed by a determination order that concluded that she had not suffered any PPD. She requested reconsideration and, after an evaluation by a medical arbiter, was awarded 14 percent PPD. On review by the hearings division, an administrative law judge (ALJ) increased the award to 31 percent. Claimant then appealed to the Board, arguing that the ALJ erred in classifying her pre-injury capability as "medium" instead of "heavy." The Board rejected her argument but, based on findings not relevant to this case, raised claimant's PPD from 31 percent to 37 percent. Claimant sought review before this court, arguing that the Board had erroneously refused to consider testimony regarding the nature of her job at the time of her injury. We agreed with her argument and remanded to the Board for reconsideration. *Fister v. South Hills Health Care*, 149 Or App 214, 942 P2d 833 (1997), *rev den* 326 Or 389 (1998).

On reconsideration, the Board considered the evidence that was the subject of claimant's first request for judicial review. It awarded claimant unscheduled disability of 45 percent. It observed,

"Adaptability is measured by comparing a worker's Base Functional Capacity (BFC) to the Residual Functional Capacity (RFC) at the time of becoming medically stationary. *Former* OAR 436-35-310(2). Here, there is no dispute that claimant's RFC is 'medium/light.' The dispute focuses solely on claimant's BFC, with claimant contending that her BFC is 'heavy' and SAIF contending that it is 'medium.' Claimant has the burden of proving the nature and extent of any disability resulting from the compensable injury. ORS 656.266.

"Here, the parties do not dispute the Appellate Reviewer's finding that the highest SVP[2] claimant attained in the last five years was her at-injury job. (Ex 35-5). Thus, we find that claimant has met the SVP requirements pursuant to *former* OAR 436-35-300(3). *Former* OAR 436-35-310(4)(c). Therefore, claimant's BFC is determined under *former* OAR 436-35-310(4)(a), which provides for determination of a worker's BFC using:

---

[2] "SVP" is an abbreviation for "specific vocational preparation" or the amount of time required by a typical worker to develop the ability to perform the job. OAR 436-35-300(3)(a).

" 'The highest strength category assigned in the DOT [Dictionary of Occupational Titles] for the most physically demanding job that the worker has successfully performed in the five (5) years prior to determination. When a combination of DOT codes most accurately describes a worker's duties, the highest strength for the combination of the codes shall apply.'

"The parties do not dispute that the most physically demanding job claimant performed in the five years prior to determination is her at-injury job as a CNA. The dispute arises over whether the duties of claimant's at-injury job more closely fit within the DOT description of a nurse's assistant (DOT 355.674-014) or an orderly (DOT 355.674-018). * * * After reviewing the record, including claimant's testimony, we find that a combination of the two DOT codes for nurse's assistant and orderly most accurately describes claimant's at-injury CNA job." (Footnote omitted.)

The Board appears to have reasoned under OAR 436-35-310[3] as follows: It found that claimant satisfied the SVP requirements for her job at the time of injury. Because of that fact, she met the requirements of OAR 436-35-300(3), and, therefore, her BFC could not be calculated by using subsection (4)(c). The Board then turned to a calculation under subsection (4)(a). Under subsection (4)(a), the Board concluded that it should combine the two DOT job descriptions to most accurately describe claimant's job at injury. As a result,

---

[3] OAR 436-35-310 provides, in part:

"(4)  The worker's Base Functional Capacity (BFC) is *the most current of*:

"(a)  The highest strength category assigned in the DOT [which, among other things, rates occupations according to the physical demands they impose] for the most physically demanding job that the worker has successfully performed in the five (5) years prior to determination. When a combination of DOT codes most accurately describes a worker's duties, the highest strength for the combination of codes shall apply; or

"* * * * *

"(c)  For those workers who do not meet the requirements pursuant to OAR 436-35-300(3), and who have not had a second-level physical capacity evaluation performed prior to the on-the-job injury or disease, their prior strength shall be based on the worker's job at the time of injury.

"* * * * *

"(e)  The following classifications shall apply to establish BFCs: sedentary (S), light (L), medium (M), heavy (H), and very heavy (VH) as defined in section (3) of this rule." (Emphasis added.)

the Board awarded claimant additional PPD for a total of 45 percent.

SAIF seeks review of the Board's calculation and makes two assignments of error: (1) that the Board erred in its application of OAR 436-35-310(4)(a); and (2) that the Board should have instead used OAR 436-35-310(4)(c) in calculating claimant's BFC. Claimant contends that, under either subsection, the correct BFC is "heavy." Our first inquiry is whether the Board's decision to reject (4)(c) as the method for calculation is supported by substantial reason.

OAR 436-35-310(4) required the Board to use the calculation that would result in the "most current" assessment of a worker's capacity. Subsection (4)(c) authorizes the Board to use the "job at the time of injury," under certain circumstances. Thus, subsection (4)(c) appears to be a logical beginning point for a calculation under the rule and the circumstances of this case—claimant's job at the time of injury is likely to be the "most current" assessment. However, subsection(4)(c) can be applied only to workers who (1) do not meet the requirements of OAR 436-35-300(3) regarding formal educational and vocational training, and (2) have not had a "second-level physical capacity evaluation performed prior to the on-the-job injury." The Board does not explain why subsection (4)(c) is inapplicable, other than to conclude that claimant had met the SVP requirements of OAR 436-35-300(3) for her job at the time of her injury. That conclusion is based on the apparent assumptions that the appellate reviewer found claimant to have satisfied the SVP requirements for her nurse's assistant job, that the SVP for that job was the highest possible SVP claimant could obtain, and that the parties did not dispute those findings. However, SAIF disagrees that the appellate reviewer made those predicate findings and points to the appellate reviewer's comments that he had received no work history that would permit a determination of SVP. Moreover, the parties appear to agree that claimant's calculation should be made under subsection (4)(c), which requires a finding that she has *not* satisfied the SVP requirements for her job at the time of her injury under OAR 436-35-300(3).

OAR 436-35-300 provided, in part:

"(3)  A value for a worker's Specific Vocational Preparation (SVP) time is allowed based on the job(s) the worker has performed during the five (5) years preceding the date of issuance.

"(a)  SVP is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job-worker situation. The SVP range is from 1 (lowest) to 9 (highest) associated with each DOT code. When a combination of DOT codes most accurately describes a worker's duties, the highest SVP shall apply if the worker has met the specific vocational preparation training time for that specific code.

"(b)  The worker's SVP value is the highest SVP of any job that the worker has met in the five years prior to the date of issuance as follows:

"(A)  A worker is presumed to have met the SVP training time after completing employment with one or more employers in that job classification for the time period specified in the table in section (4) of this rule.

"(B)  A worker has also met the SVP for a job after successfully completing an authorized training program, on-the-job training, vocational training or apprentice training for that job classification. College training organized around a specific vocational objective is considered specific vocational training."

Under OAR 436-35-300(3), the worker's SVP value is based on a five-year work history and a prescribed time period of *successful* completion of a particular job. For instance, the DOT provides that, for the job of certified nurse's assistant, the proper SVP value is 4. That SVP value also requires the completion of 3 to 6 months of employment in the job.

In an effort to understand the Board's reasoning and why it decided that claimant's calculation could not be made under subsection (4)(c), we have examined the evidentiary record. There is no evidence of a five-year work history in the record before us. Nor is there evidence that claimant successfully performed her job at the time of injury or any other job. Moreover, the appellate reviewer made his calculation under

subsection 4(c), finding that claimant had worked only two or three months at her job when she was injured. That time period is less than the SVP requirement for claimant's job-at-injury. In other words, the record before the Board reveals considerable evidence that the requirements of OAR 436-35-300(3) had not been satisfied. That evidence could satisfy the first requirement of subsection (4)(c). It could be that the parties agreed to the Board's predicate findings, or that there is evidence that supports the Board's reasoning that claimant does not meet the requirements of subsection 4(c), but those facts are not apparent to us from the Board's opinion.

By resorting to subsection (4)(a) without expressing in other than conclusory language why it could not use subsection (4)(c), the Board has failed to adequately explain its rationale in concluding that a calculation under that subsection is more likely to result in a proper calculation of claimant's current BFC. If a reviewing court cannot discern an agency's rationale, it cannot determine whether the agency has erroneously interpreted the law or whether the order is supported by substantial evidence. *Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 636-37, 16 P3d 1189 (2000). We are left to "read between the lines" of the Board's order, and "we are not inclined to decide *whether* [the Board] correctly interpreted the law in this regard without first knowing *how* [the Board] interpreted the law." *Id.* at 637. We must therefore remand for an explanation of how the facts found led to the inferences and legal conclusions on which the order is based.

Reversed and remanded for reconsideration.

**SCHUMAN, J.,** concurring.

I agree with the majority that we must remand this case because the record does not provide sufficient information to enable us to decide whether the Workers' Compensation Board erred in applying subsection (a) of *former* OAR 436-35-310(4) instead of subsection (c). I write separately to register my opinion that we should not send this case back to the Board for reconsideration without providing any guidance about how to apply the subsection it ultimately decides is correct.

In the process of deciding this case, the Board arguably applied the wrong subsection of *former* OAR 436-35-310(4), arguably misinterpreted that subsection, and indicated that it would arguably have misapplied the other subsection had it chosen to apply that one. We now send the case back to the Board without deciding the issue on which the parties disagree: how should BFC be calculated? Further, claimant argues that the results under subsections (a) and (c) are identical, so that any error in choosing one over the other is harmless. Our remand without addressing that assertion implies that we believe otherwise: why would we remand for a choice if we thought that the choice was irrelevant? To clarify our position on that issue, and to prevent more unnecessary delays, we should offer some guidance. Mine follows.

I begin with subsection (4)(a). Under that subsection, if the claimant's job is precisely described in the DOT, the strength rating assigned by the DOT for that job is used. If, on the other hand, "a combination of DOT codes most accurately describes a worker's duties, the highest strength for the combination of codes shall apply." *Former* OAR 436-35-310(4)(a). This sentence, as employer correctly argues, does not allow a claimant whose job includes only a very few duties from the higher DOT category to bootstrap himself into it. The lawyer (DOT code: "sedentary") who occasionally moves a box of files or carries a heavy suitcase does not, by virtue of those occasional duties, qualify for the same strength rating as a file clerk (DOT code: "light") or baggage clerk (DOT code: "medium"). It strains the plain language beyond its breaking point to say that a combination of coded jobs is the "most accurate" description of a claimant's job merely because no coded job lists every duty of the claimant's job. If, for example, a DOT job description lists 25 duties, and the claimant's job has all of those plus two duties from a higher strength-rated DOT job description, then the single, lower DOT description more accurately describes the claimant's job than the combined description. Under the better reading, "a combination of DOT codes most accurately describes a worker's duties" when a complete list of a worker's duties more closely resembles a combined list of all the duties in two job categories than it does the duties in either category by itself.

Contrary to employer's assertion, however, this system does not require a claimant to demonstrate the frequency with which she performs the duties from the higher strength-rated job, or, for that matter, that the specific duties from the higher strength-rated job that she performs in her job require strength. Subsection (4)(a), by explicitly incorporating the DOT descriptions, necessarily incorporates that document's presumptive strength ratings; the DOT makes generic strength ratings for jobs, based on the typical frequency of strength-related tasks such a job entails, and subsection (4)(a) adopts them as well.

Calculating BFC under subsection (4)(c), on the other hand, does *not* require or even permit the Board to consult the DOT; subsection (4)(c) nowhere refers to that document. Rather, the assessment under subsection (4)(c) relies on the categories set out in subsection (4)(e) and defined in *former* OAR 436-35-310(3). Subsection (4)(e) lists the classifications that "shall apply to establish BFCs: sedentary (S), light (L), medium (M) * * *," etc. Each of these categories is defined in subsection (3). Those definitions incorporate both strength and frequency criteria. Thus, for purposes of subsection (4)(c), a "light" job is one where the worker has the ability to lift 20 pounds "about 1/3 of the time" and lift or carry objects weighing up to 10 pounds "up to 2/3 of the time." *Former* OAR 436-35-310(3)(f), (3)(m), (3)(n). Applying subsection (4)(c), therefore, will require an examination of the frequency and amount of the strength demands of claimant's job at injury.

In sum, properly to calculate claimant's BFC, the Board must have access to facts regarding claimant's work history from which it can determine which subsection of *former* OAR 436-35-310(4)(a) and subsection (4)(c) applies. If subsection (4)(a) is the appropriate subsection, the BFC depends on the DOT code for the claimant's job. If claimant's job duties more closely resemble the combined job duties of two jobs than of any single job, then the appropriate strength rating is the one for the higher of the two jobs. The BFC under subsection (4)(a) can be calculated without any evidence indicating the frequency with which claimant lifts particular weights, because weights and frequencies are categorically incorporated into DOT codes. If subsection (4)(c) is the

appropriate subsection, then the BFC is determined according to the scale and definitions in subsections (3) and (4)(e). Those subsections establish their own strength and frequency criteria. The calculation of BFC under subsection (4)(c) does not involve DOT codes or job categories; each claimant's duties are evaluated on a case-by-case basis.

Claimant originally filed her claim in 1993. The case has been to this court and back to the Board on remand once before. For this reason, and because the Board's legal analysis—the subject of this appeal—seems flawed, I believe that the goals of judicial efficiency in general and the workers' compensation statutes in particular would be better served if we now addressed the issue that brought the case here, instead of waiting for it to reappear.