Submitted on remand from the Oregon Supreme Court August 7, 2001;
resubmitted en banc February 6, reversed and remanded for reconsideration
May 8, 2002

In the Matter of the Compensation of
Consuelo Trujillo, Claimant.

Consuelo TRUJILLO,
*Petitioner,*

*v.*

PACIFIC SAFETY SUPPLY
and SAIF Corporation,
*Respondents.*

96-10056; A99410

45 P3d 1017

Max Rae for petitioner.

David Runner for respondents.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer, and Schuman, Judges.

LANDAU, J.

Wollheim, J., concurring in part and dissenting in part.

**LANDAU, J.**

The Oregon Supreme Court remanded this workers' compensation case to us for reconsideration in light of its decision in *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000). In our original opinion, *Trujillo v. Pacific Safety Supply*, 159 Or App 350, 978 P2d 1037 (1999), we reversed and remanded for reconsideration the Workers' Compensation Board's (board) order awarding claimant permanent partial disability. We rejected claimant's contention that he had a constitutional right to testify at an oral hearing concerning the rating of his base functional capacity (BFC), but we concluded that reversal and remand were required because the board's order included inconsistent findings concerning the rating of claimant's BFC. On remand, and after reconsideration in light of *Koskela*, we adhere to our conclusion that claimant does not have a constitutional right to testify at an oral hearing concerning the rating of his BFC. We therefore reverse and remand for reconsideration on the grounds stated in our original opinion.

The relevant facts are few and undisputed. Claimant compensably injured his neck, shoulders, and chest. Employer accepted the claim and, after claimant became medically stationary, issued a notice of closure awarding 16 percent unscheduled permanent partial disability. A worksheet attached to the notice indicated that claimant's BFC and residual functional capacity (RFC) were light. Claimant requested reconsideration, and the reconsideration order upheld the notice of closure. Claimant requested a hearing. At the hearing, he requested an opportunity to testify concerning the rating of his BFC. The administrative law judge declined the request, concluding that ORS 656.283(7) precludes the admission of evidence that was not in the reconsideration record, and the board affirmed. The board ultimately awarded claimant 21 percent disability, but claimant petitioned for judicial review, seeking additional compensation. He advanced two assignments on review. First, he argued that the board erred in failing to permit him to testify at the hearing concerning the rating of his BFC. According to claimant, he has a right to do so, guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. Second, he argued that the board's findings concerning his BFC were inconsistent. We rejected the first assignment, but we agreed with the second. *Trujillo*, 159 Or App at 352.

Claimant petitioned for review. While the petition was pending, the Oregon Supreme Court issued its opinion in *Koskela*. In that case, the court held that, notwithstanding ORS 656.283(7), a claimant seeking permanent total disability benefits has a constitutional right to an oral evidentiary hearing. The court reached that conclusion by applying the three-part analysis of *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976). The court held in *Koskela* that: (1) a claimant whose claim has been accepted has a significant property interest in receiving permanent total disability benefits, 331 Or at 378-79; (2) because a worker seeking permanent total disability benefits must establish willingness to work and reasonable efforts to find suitable employment, and because those elements "require judgment about the worker's credibility and veracity," the probable value of an oral hearing is substantial, *id.* at 381; and (3) the additional cost of providing a hearing is minimal compared to the magnitude of the private interest at stake, *id.* at 382.

**1.** It now falls to us to determine whether that decision requires a different result in this case. Following the lead of the Oregon Supreme Court in *Koskela*, we examine the procedure in this case in light of the three *Mathews* factors.

We begin with the nature of claimant's interest. At issue in this case is the extent of claimant's entitlement to permanent *partial* disability benefits, determined by calculation of, among other things, his BFC. As we explained in *SAIF v. Fister*, 177 Or App 13, 15, 33 P3d 320 (2001):

> "The amount of compensation that an injured worker receives for a permanent injury depends on the extent of the disability (called 'permanent partial disability,' or PPD) caused by the injury. ORS 656.214(5). The extent of disability, expressed as a percentage (*e.g.*, '14 percent PPD'), depends in turn on the seriousness of the injury 'as modified by factors of age, education and adaptability to perform a given job.' ORS 656.726(4)(f)(A). The Department of Consumer and Business Services provides formulas for

expressing these modifying factors as numbers. A high number adds to the extent of disability, which, in turn, adds to the injured worker's compensation.

> "The modifying factor at issue in this case is 'adaptability.' Adaptability, under the Department's rules, is determined by comparing the worker's ability to perform work before and after the injury or, in the language of the rules, by comparing the worker's 'base functional capacity' (BFC) with his or her 'residual functional capacity' (RFC). *Former* OAR 436-35-310(2) (1994). These statutes and rules reflect the proposition that a worker whose injury causes a significant loss of working capacity deserves more compensation than a worker whose injury inflicts minimal harm to working capacity[.]"

(Footnote omitted.)

A worker who sustains partial disability remains able to work; indeed, a partially disabled worker has the right either to return to work with the employer at injury, ORS 656.415, or to obtain vocational assistance or training if he or she is unable to find suitable new employment, ORS 656.340(6). A worker who sustains partial disability also is entitled to reasonable and necessary medical services, ORS 656.245, and to a reopening of the claim for additional benefits if the compensable condition worsens or if new medical conditions develop as a result of the compensable condition. ORS 656.273(1). Thus, the purpose and effect of an award of permanent partial disability is different from the award of permanent total disability that was at issue in *Koskela*. As the Supreme Court noted in that case, an award of permanent total disability implicates a significant property interest because its purpose is to provide a form of lifetime total wage replacement. According to the court, the importance of economic self-sufficiency is "self-evident." *Koskela*, 331 Or at 379. In the case of permanent partial disability, the issue of economic self-sufficiency is not so directly implicated. The benefit is usually paid as a one-time lump sum, rather than as a monthly payment over the lifetime of the worker. ORS 656.214.

We turn to the risk of erroneous decisions and the probable value of additional safeguards. In *Mathews*, the United States Supreme Court observed that a determination

of when a social security benefit claimant's disability ceases is an issue of medical proof that is generally determined by reference to routine, standard, and unbiased medical reports. As such, the Court stated, issues of credibility and veracity are rarely involved and thus the risk of error and probable value of the additional safeguard of requiring an oral hearing are slight. *Mathews*, 424 US at 344. Similarly, in *Logsdon v. SAIF Corp.*, 181 Or App 317, 323-24, 45 P3d 990 (2002), we held that a determination of a workers' compensation claimant's medically stationary date is an issue of medical proof that does not routinely implicate credibility and veracity concerns. In contrast, in *Koskela*, the Oregon Supreme Court held that a determination of a claimant's entitlement to permanent total disability benefits largely turns on the worker's credibility concerning his or her subjective willingness to work and reasonable efforts to find suitable employment. Because issues of credibility and veracity are inherent in the decision-making process, the court held, the risk of error through failing to permit a claimant to testify at an oral hearing is great. *Koskela*, 331 Or at 380.

In our view, the calculation of a claimant's BFC is much more like the matters at issue in *Mathews* and *Logsdon* than those at issue in *Koskela*. Under applicable administrative rules, the principal method of determining a BFC is by reference to the Dictionary of Occupational Titles (DOT) code. OAR 436-035-0310(3)(a). In some cases, it also may be determined from a physical capacity evaluation performed by medical experts before the injury or disease or from job descriptions concerning the nature of the worker's duties at the time of the injury. In this case, the board determined claimant's BFC by reference to the DOT code. Although it is conceivable that, in at least some cases, a claimant could take issue with the accuracy of a job description, the resolution of such a dispute does not inherently involve matters of credibility and veracity. Moreover, as the United States Supreme Court observed in *Mathews*, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." 424 US at 344.

Finally, concerning the state's interests and the costs of added procedural safeguards, we note that, even

assuming for the sake of argument that, on a per-case basis, the costs are relatively small, the sheer volume of permanent partial disability cases suggests that the impact of requiring an oral hearing on all BFC disputes would not be insubstantial. According to the Workers' Compensation Division, there are more than 6,000 claim closures per year with awards of permanent partial disability. In contrast, the total annual number of permanent total disability awards—the category of awards at issue in *Koskela*—is approximately 12.

In any event, given the relatively limited nature of the individual property interest involved in a BFC calculation, and given the fact that credibility and veracity simply do not ordinarily pertain to a determination of a claimant's BFC, we conclude that the added procedural benefits obtained by requiring an oral hearing are too meager to outweigh the state's interest in developing a complete record at an early stage in the process to promote a speedy and efficient remedy for workers seeking benefits.

As it does in *Logsdon*, the dissent takes issue with our application of *Mathews* in this case. And, as in *Logsdon*, we find the dissent's arguments in this case unpersuasive.

The dissent begins by complaining that we err in unjustly "minimizing" the importance of the interest at stake. According to the dissent, a claimant's interest in permanent partial disability benefits is significant because those benefits are, to some extent, designed to provide a substitute for lost income occasioned by a workplace injury. 181 Or App at 312 (Wollheim, J., dissenting). The dissent's argument amounts to an attack on a straw man, however. We have not said that claimant's interest is insignificant, only that, because of its partial nature, it is *less* significant than the interests at issue in *Koskela* and in *Mathews. See, e.g., Carr v. SAIF*, 65 Or App 110, 120-21, 670 P2d 1037 (1983) (claimant's interest in uninterrupted receipt of temporary disability benefits, while significant, "is generally less than the interest of the recipient in *Mathews*").

Next, the dissent complains that we err in concluding that the risk of erroneous decisions as to a worker's BFC is minimal in the absence of cross-examination. Although the dissent acknowledges that the BFC is ordinarily determined

by reference to the DOT, it insists that cross-examination is required in this case, because claimant contests the classification of his job duties to which the DOT code was applied. 181 Or App at 313-14 (Wollheim, J., dissenting). As we have noted, however, the fact that, *in this case*, claimant has contested his job classification is beside the point. The procedural safeguards required by the Due Process Clause under *Mathews* are not derived from the facts of particular cases, but rather from "the risk of error inherent in the truthfinding process as applied *to the generality of cases*." 424 US at 344 (emphasis added). The dissent does not explain why, in the vast majority of cases, a worker's job description cannot be established by affidavits and other documentation. It certainly does not explain why, "in the generality of cases," there is a significant risk of erroneous decisionmaking in the absence of a right to cross-examine. That is the showing that *Mathews* requires.

Third, the dissent asserts that any burden associated with permitting cross-examination will be minimal. 181 Or App at 314 (Wollheim, J., dissenting). As in *Logsdon*, the dissent here misstates the relevant inquiry. *Mathews* requires, not just an assessment of the burden of requiring additional procedures, but also a weighing of that burden against any benefits that might be obtained by requiring those procedures. As we have noted, there is reason to believe that the burden would not be insignificant. But assuming that that is not the case, even minimal burdens cannot be justified in light of the correspondingly minimal benefits that would be obtained by requiring the additional procedural safeguards in the generality of cases.

**2.** Citing Wigmore's treatise on evidence, the dissent finally insists that cross-examination "is the best method for discovering the 'truth.' " 181 Or App at 314 n 3 (Wollheim, J., dissenting). With respect, the Due Process Clause simply does not require "the best method for discovering the truth." *See, e.g., Landon v. Plasencia*, 459 US 21, 35, 103 S Ct 321, 74 L Ed 2d 21 (1982) (Due Process Clause does not permit court to impose additional procedures merely "because the reviewing court may find them preferable"). It requires minimum procedural safeguards, depending on the nature of the interests involved and a weighing of costs and benefits in terms of

the risks of erroneous decisionmaking in the generality of cases. *Mathews*, 424 US at 344.

Reversed and remanded for reconsideration.

**WOLLHEIM, J.,** concurring in part and dissenting in part.

The majority concludes that claimant does not have a constitutional right to testify at his extent of disability hearing. Because I disagree with the majority's application of the *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976), three-part due process analysis, I respectfully dissent.[1] I also believe that the majority's opinion is inconsistent with the Supreme Court's opinion in *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000).

The issue here is the extent of claimant's unscheduled permanent partial disability (PPD), which is calculated by determining the "loss of earning capacity due to the compensable injury." ORS 656.214(5).

"The extent of disability, expressed as a percentage (*e.g.*, '14 percent PPD'), depends in turn on the seriousness of the injury 'as modified by factors of age, education and adaptability to perform a given job.' ORS 656.726(4)(f)(A). The Department of Consumer and Business Services provides formulas for expressing these modifying factors as numbers. A high number adds to the extent of disability, which, in turn, adds to the injured worker's compensation."

*SAIF v. Fister*, 177 Or App 13, 15, 33 P3d 320 (2001). A comparison is made between claimant's physical capacity to work before the compensable injury, described as base functional capacity (BFC), OAR 436-035-0310(3)(a), and his remaining physical ability to work once medically stationary, described as residual functional capacity (RFC), OAR 436-035-0310(3)(b).

"These statutes and rules reflect the proposition that a worker whose injury causes a significant loss of working capacity deserves more compensation than a worker whose

---

[1] I concur with the result reached because I would conclude that the case must be remanded to the board because the board made inconsistent findings.

injury inflicts minimal harm to working capacity, even if both workers end up identically disabled."

*Id.* at 15. *See also Ford v. SAIF*, 7 Or App 549, 552-53, 492 P2d 491 (1972).

Claimant sustained a compensable injury to his neck, upper back, and right shoulder. A June 1996 notice of closure awarded claimant 16 percent unscheduled PPD. This award considered the relevant social and vocational factors plus claimant's impairment. The specific dispute here concerns claimant's work during the five years before the injury. The closure order determined that claimant's work history consisted of one job, production assembler, which was described as light work. OAR 436-035-0310(3)(f) defines light work as "the ability to occasionally lift 20 pounds and can frequently lift or carry objects weighing up to 10 pounds."

Claimant submitted evidence during reconsideration that his past work was "heavy." OAR 436-035-0310(3)(j) defines "heavy" work as "the ability to occasionally lift 100 pounds and the ability to frequently lift or carry objects weighing 50 pounds." The specific jobs and their accompanying strength levels that claimant submitted at reconsideration are: (1) Christmas-tree farm worker, Dictionary of Occupational Titles (DOT) strength level, Heavy; (2) Cannery worker, DOT strength level, Light; (3) Farm worker, fruit II, DOT strength level, Medium; (4) Vine pruner, DOT strength level, Light; (5) Lumber handler, DOT strength level, Heavy; and (6) Assembler, production, DOT strength level, Light.

The reconsideration order still classified claimant's work as light and affirmed the award of 16 percent PPD. Claimant requested a hearing and sought to testify regarding his actual job duties for his employer and past employers. In an offer of proof, claimant indicated that his testimony would establish that his past work was heavy. If claimant was correct that his past work was heavy, then he should have received an award of 36 percent PPD, rather than the 16 percent PPD award he actually received.

The majority holds that there is no statutory right to testify at an extent of disability hearing and that claimant

does not have a constitutional right, based on the Due Process Clause, to testify at hearing. I disagree.

## Due Process Analysis

Although I agree that the three-part analysis from *Mathews* applies, as required by *Koskela*, I disagree with the way in which those factors are applied by the majority. Those three factors are:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Mathews*, 424 US at 335. I will address each factor in turn.

## Private Interest Affected

First, the majority unjustifiably minimizes the importance of the interest at stake by focusing on the fact that permanent *partial* disability benefits are at issue. The majority distinguishes that interest from the permanent *total* disability benefits that were involved in *Koskela*, concluding that an award of PPD is not as significant. The majority supports its position by relying on the fact that a claimant who is partially disabled still remains able to work and therefore the "issue of economic self-sufficiency is not so directly implicated." 181 Or App at 306. I disagree. Disability benefits, whether partial or total, are designed to provide a substitute for income lost due to a worker's inability to be self-supporting, as before the injury. The loss of partial disability compensation can be significant and can adversely affect the claimant and his or her dependents. *See* ORS 656.012(2)(a) (The objective of the workers' compensation law is "[t]o provide, regardless of fault, * * * fair, adequate and reasonable income benefits to injured workers and their dependents[.]").

In *Koskela*, the court concluded that the claimant's interest in permanent total disability benefits was great because the benefits provide economic self-sufficiency and

because of the finality of an adverse determination. 331 Or at 379. Here, although PPD benefits do not continue indefinitely, the nature of the interest at stake is the same—maintaining economic self-sufficiency. Furthermore, an adverse PPD decision is no less final than an adverse permanent total disability decision. Thus, an award of PPD benefits involves a significant interest and should be given greater weight than the majority gives to it.

<u>Risk of Erroneous Decisions</u>

The second *Mathews* factor is the risk of erroneous decisions and the probable value of additional safeguards. The majority states that the facts of this case are more similar to those involved in *Mathews* than those in *Koskela*. As I discussed in my dissent in *Koskela*, the analogy is not perfect. *Koskela v. Willamette Industries, Inc.*, 159 Or App 229, 256-57, 978 P2d 1018 (1999) (Wollheim, J., dissenting). In *Mathews*, the issue was whether the petitioner was entitled to a hearing *before* the termination of his social security disability benefits where he received a full evidentiary hearing *after* termination and, if he prevailed, would receive full retroactive benefits. For the analogy to be perfect, the issue in *Mathews* would have to have been the constitutionality of the claimant's right to challenge the benefit amount without the opportunity to testify at all. Claimant, unlike the petitioner in *Mathews*, has no right to an evidentiary hearing before his award of PPD is determined and no statutory right to testify at hearing.

The majority also cites *Mathews* as authoritative in the question of whether credibility is invoked in the determination of a worker's BFC. In *Mathews*, the Court said that a determination of when a claimant's disability ceases is an issue of medical proof that is generally determined by reference to routine, standard, and unbiased medical reports and thus witness credibility and veracity are rarely involved. 424 US at 344. Here, on the other hand, the issue is the calculation of claimant's BFC, which, in this case, was determined solely by reference to the DOT.

There is a difference between a determination of when a person's disability ceases and a determination of one's BFC. The former is a question of medical proof that can

be determined by reference to medical records.[2] In that situation, a physician has examined and spoken with the claimant about his or her injury and can provide an opinion about the status of that person's injury and whether it continues to materially improve. Under the Workers' Compensation Act, the determination of one's BFC simply involves a dictionary definition of a worker's job description, *in general*, and does not take into account the specific job duties of the person who actually does the job. The majority summarily acknowledges and dismisses that fact when it states that "[a]lthough it is conceivable that, in at least some cases, a claimant could take issue with the accuracy of a job description, the resolution of such a dispute does not inherently involve matters of credibility and veracity." 181 Or App at 307.

I disagree. When the board relied on the "facts" as stated in the DOT, claimant was precluded from challenging those "facts" and explaining how his job duties exceeded those described in the DOT. The BFC determination requires the decisionmaker to resolve factual disputes as to the claimant's past work and, in so doing, to make judgments about credibility and veracity.

The claimant has the burden of proving the extent of disability. ORS 656.266(1). Claimant argues that his BFC was classified incorrectly. In an adversarial hearing process, the only fair method to determine a claimant's BFC is through testimony from the claimant as to what the job duties were. If the employer disagrees, it can cross-examine the claimant or present evidence that refutes the claimant's testimony.[3] In any event, the factfinder—*i.e.,* the administrative law judge (ALJ)—not a book—should decide what the claimant's work entailed.

---

[2] However, the best way to test the accuracy of those medical records is through cross-examination. *See Logsdon v. SAIF*, 181 Or App 317, 326, 45 P3d 990 (2002) (Wollheim, J., dissenting).

[3] Our dispute resolution system is premised on the belief that the adversarial system will produce the "truth" and that cross-examination is the best method for discovering the "truth."

"It may be that in more than one sense, [cross-examination] takes the place in our system which torture occupied in the mediaeval system of the civilians. Nevertheless, it is beyond any doubt the greatest legal engine ever invented for the discovery of truth. However difficult it may be for the layman, the scientist, or the foreign jurist to appreciate this its wonderful power, there has probably

Safeguarding against mistakes in the process is the purpose of procedural due process requirements. *Mathews*, 424 US at 345. Thus, the value of an opportunity for the presentation of evidence at an oral hearing about the extent of PPD is no less substantial than the interests at stake in *Koskela*.

## Government Interest & Fiscal and Administrative Burden

The majority overstates the burden of allowing a claimant to testify about BFC. The opinion states that there are 6,000 annual claim closures and 12 annual permanent total disability awards.[4] The opinion ignores that the legislature already provides an injured worker with the right to a hearing before the ALJ. Further, in response to *Koskela*, the 2001 Legislative Assembly amended the reconsideration process to allow a worker to testify by deposition.[5] ORS 656.268(6)(a)(A). Any increased costs would be minimal, not substantial as the majority suggests.

Finally, as a matter of fundamental fairness, claimant should have been given the opportunity to testify.

"The essence of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner. Fundamental fairness emphasizes *factfinding procedures*. The requirements of notice, adequate counsel, confrontation, cross-examination, and standards of proof flow from this emphasis."

*State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990) (emphasis added; citation omitted).

The fundamental consideration that the majority fails to acknowledge is the key distinction between the facts

never been a moment's doubt upon this point in the mind of a lawyer of experience. * * * [C]ross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure."

John Henry Wigmore, 5 *Evidence in Trials at Common Law* § 1367, 32 (1979).

[4] I assume the majority's numbers are correct, although it does not state its source.

[5] Whether such a procedure satisfies the Due Process Clause is not an issue here. The point is that the legislature determined that allowing an injured worker to testify is appropriate.

of *Mathews* and the facts of this case. In *Mathews*, the petitioner had the opportunity for a *full* evidentiary hearing *after* his benefits were terminated. Here, on the other hand, claimant has no similar right. Unlike the petitioner in *Mathews*, claimant's due process rights will never be satisfied if he is not given the opportunity to testify at his extent of disability hearing.

For the reasons stated in this dissent and my dissents in *Logsdon v. SAIF*, 181 Or App, 317, 45 P3d 990 (2002) (Wollheim, J., dissenting), and *Mount v. DCBS*, 181 Or App 458, 46 P3d 210 (2002) (Wollheim, J., dissenting), the majority wrongly concludes that claimant does not have a constitutional right to testify at his extent of disability hearing.

Edmonds and Armstrong, JJ., join in this concurrence and dissent.